**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN A. TOVAR, JR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 cv 2260 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Juan A. Tovar, Jr. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability benefits and supplemental security income under Titles II and XVIII of the Social Security Act. Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner [dkt. 13], which the Court will construe as a motion for summary judgment; the Commissioner has filed a cross-motion for summary judgment [dkt. 23]. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 13], denies the Commissioner's motion for summary judgment [dkt. 23], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**I.  Background**

    **a.  Procedural History**

On December 15, 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Titles II and XVIII of the Social Security Act, 42 U.S.C. §1382, alleging disability as of May 12, 2013. [Administrative Record ("R") 226-35.] Plaintiff's claims were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on November 7, 2016 before Administrative Law Judge ("ALJ") Margaret Carey. [R 81-130.] Plaintiff

was represented by counsel, and a Vocational Expert ("VE") testified during the hearing. *Id.* On January 27, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R 61-72.] On January 29, 2018, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1-6.]

    b.    **Plaintiff's Background**[1]

Plaintiff was born on June 30, 1979, and was 33 years old on his alleged disability onset date. In February 2001, Plaintiff suffered gunshot wounds to the right shoulder, left lower back, and left knee; Plaintiff recovered, but shrapnel remains in his body and he continues to have pain in those areas. [R 115-16, 334-35, 509-10.] However, Plaintiff worked in a variety of laborer positions from 2002 until 2013 when he alleged he became unable to work due to symptoms of multiple sclerosis ("MS"). [R 264-71, 312.] The record reflects that since his diagnosis, Plaintiff has experienced many symptoms typical of MS. [*See* R 26 detailing MS symptoms.] Plaintiff has experienced severe fatigue [R 13, 16, 105-07, 120, 122, 277, 372, 376, 384, 425, 430, 438, 441, 455, 465, 470, 472, 476, 479, 481, 486, 493, 510]; visual disturbances including episodes of blurred and double vision, diminished visual field in the left upper quadrant, and nystagmus (*i.e.*, repetitive, uncontrolled movements of the eye) [R 13-14, 77, 105, 110, 121-22, 273, 279, 358-59, 372, 375-77, 381, 384, 386, 388, 390-91, 425, 479, 482, 525, 550, 595]; gait disturbances noted as ataxia and dysmetria [R 14-16, 46, 54, 77, 334, 358, 372-73, 375-76, 381, 385-86, 388, 479, 547, 550, 595-96]; positive and equivocal Babinski signs[2] [R 334, 376, 381, 388]; falls due to balance issues [R 13-14, 46, 48-52, 273, 376, 393)]; joint and muscle pain, particularly in his knees and back [R 19, 22, 48, 116, 121, 315, 343, 372, 376, 384, 465, 509-11, 514, 516, 565, 573]; numbness, tingling, and "electric shock" feelings in his extremities (worse on the right

---

[1] The Court limits its discussion of the factual and medical background of this case relevant to the analysis provided herein.

[2] The Babinski sign/reflex occurs after the sole of the foot has been firmly stroked. The big toe then moves upward or toward the top surface of the foot. The other toes fan out. In an adult, it is often a sign of a central nervous system disorder. https://medlineplus.gov/ency/article/003294.htm (visited December 11, 2018).

side) [R 13-14, 117, 272, 315, 376, 425, 455, 479, 482, 546]; foot drop[3] [R 13-14, 16]; and bladder and bowel issues including incontinence. [R 13-14, 16, 46, 54, 279, 355, 376, 393, 510]. Plaintiff was hospitalized for five days in November 2014 for a course of intravenous steroid therapy to treat his MS symptoms. [R 376-408.]

A September 2014 electrodiagnostic study of Plaintiff's right lower extremity showed findings consistent with a right S1 nerve root compromise and the examining physician noted that his "more significant problem is that of a central nervous system disorder, probably a myelopathic disorder, causing spastic diplegia and some neurogenic bowel symptoms." [R 331-35.] MRI studies of his brain and spine in 2014, 2015, and 2016 showed evidence of myelopathy and lesions in his left-side brain stem, cervical and thoracic spinal cord, and mild generalized volume loss, all of which were consistent with the diagnosis of MS. [R 409, 412, 535, 536-37, 593-94.]

Beginning in January 2015, Plaintiff started monthly infusions of Tysabri beginning in to control his MS. [R 10, 13, 16, 23, 30, 33, 46, 54, 77, 112, 279, 315, 358-59, 366-68, 465, 525, 540-43, 550, 595-96.] He was prescribed 800mg ibuprofen for muscle and joint pain, oxybutynin (Ditropan XL) for urinary incontinence, and amitriptyline (Elavil) for depression and paresthesias. [R 16, 23, 33, 46, 30, 54, 56, 77, 121, 315, 343-44, 564-65, 510, 550, 573, 595-96.] He alternately used a cane and a walker to help him maintain balance. [R 19, 46, 54, 114-15, 278, 547.] Plaintiff went for some physical therapy to improve his mobility, but his ability to fully engage in physical therapy was limited by ongoing fatigue, and his gait issues were not fully corrected. [R 116, 120, 425, 430, 435, 438, 441, 446, 449, 452, 455, 459, 462, 465, 470, 472, 476, 479-82, 486, 493, 497, 502, 505, 510.]

Mr. Tovar's treating neurologist, Fariha Chaudhry, MD, opined in December 2015 that

---

[3] Foot drop (or drop foot) is a sign of an underlying neurological, muscular or anatomical problem. The term describes difficulty lifting the front part of the foot, where the front of one's foot might drag on the ground when walking. https://www.mayoclinic.org/diseases-conditions/foot-drop/symptoms-causes/syc-20372628 (visited December 11, 2018).

Plaintiff's MS was stable on Tysabri since December 2014, but that since he continued to have nystagmus and balance and gait abnormalities on examinations, his MS was progressive. [R 550.] She noted that Plaintiff did not regain full remission from his last relapse. *Id.* Dr. Chaudhry further opined that Plaintiff was limited in his ability to walk, lift heavy machinery, and perform activities of coordination, and noted that he had episodes dizziness and double vision due to his MS. *Id.*

Plaintiff testified that he could only sit for approximately 30 minutes, could only stand for 15 minutes at a time before needing to sit for 30 to 45 minutes, and could only walk for approximately "three or four houses" at a time, and could drive for approximately 15-20 minutes. [R 107-108, 110.]

### c. The ALJ's Decision

On January 27, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R 61-72.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 12, 2013. [R 63.] At Step Two, the ALJ found that Plaintiff had the severe impairment of multiple sclerosis, and the nonsevere impairments of degenerative disc disease, obesity, and affective disorder. [R 63-64.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 65.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform sedentary work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps; only occasional kneeling, stooping, crouching, crawling, and balancing; and no exposure to unprotected heights or moving mechanical parts. *Id.* At Step Four, the ALJ found that Plaintiff was not capable of performing his past relevant work, which the ALJ listed as a laborer and detailer. [R 70-71.] At Step Five, however, the ALJ found that Plaintiff was capable of performing the jobs of final assembler (DOT #713.687-018); visual inspector (DOT

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

#726.684-110); and sorter (DOT #521.687-086), which the ALJ found existed in significant numbers in the national economy. [R 71-72.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R 72.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists

when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Among other things, Plaintiff asserts that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion that Plaintiff does not need an assistive device (*i.e.*, a cane or a walker) and, thus, the ALJ's residual functional capacity finding lacks substantial support. We agree.

In making a disability determination, an ALJ's RFC assessment must include an evaluation of a plaintiff's medically determinable impairments. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). "This evaluation must be captured in a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Dean v. Berryhill*, 2018 WL 3608555, at *4 (N.D. Ill. July 27, 2018) (citing SSR 96-8p; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)); *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An ALJ must always "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p. Thus, "[a]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support

6

his conclusion and explain why it was rejected." *Thomas*, 534 F. App'x at 550 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004)). This includes fully addressing the need for a cane or walker in the RFC assessment. *Harper v. Berryhill*, 2017 WL 1208443, at *8 (N.D. Ill. Apr. 3, 2017) (citing *Newell v. Astrue*, 869 F. Supp.2d 875, 892 (N.D. Ill. 2012) ("Even when a cane is not prescribed by a physician, an ALJ errs when he does not include its use in the RFC and does not explain his reasons for not doing so.")).

In the instant matter, the ALJ rejected Plaintiff's contention that he uses a walker or a cane because although Plaintiff "reported using a walker or a cane, there is no evidence of the need for a walker or cane in the treatment record," and that an assistive device "is not supported by the treatment record and therefore is not included in the residual functional capacity assessment." [R 65, 70.] As support for her "this is not supported by the treatment record" language, the ALJ cited to a single medical record noting that Plaintiff was "ambulating without assistance." [R 368.]

However, as in a similar Social Security matter recently decided in our Northern District of Illinois, "[h]ere, we find that the record includes sufficient evidence regarding [Plaintiff's] need for an assistive device, which the ALJ should not have disregarded." *Dean*, 2018 WL 3608555, at *4. For example, the Plaintiff noted in his functional report that he uses a walker which was sent home with him when he was discharged from the hospital. [R 278.] Plaintiff was using a walker at the administrative hearing and testified to his need for either a walker or a cane on a near-daily basis. [R 114-15.] Plaintiff testified as to balance and stamina issues, which he asserts are the reason he needs an assistive device. [R 105-20.] Plaintiff described his gait issues as "with the limp I have to drag my foot like a dropped foot…[a]nd if I take a wrong step I'm stumbling." [R 120.] The consultative examiner even noted that Plaintiff's "gait was slow and he used a cane" during that examination. [R 547.] At one point, without citing to specific medical records, the ALJ even acknowledged the mixed results within the treatment record as to Plaintiff's control of his muscles and gait: "while there

7

is some evidence of ataxia [*i.e.*, loss of full control of bodily movements], other treatment records indicate normal gait and other normal findings." [R 65.] While there were indeed indications of normal gait findings within the medical record, the ALJ herself noted three instances of problematic gait: in December of 2014 Plaintiff reported improved gait (meaning there was a period of impaired gait prior to this); in December 2015 Plaintiff "continued to have ataxia and difficulty with tandem walking. He continued to have balance/gait abnormalities on examination…"; and in August 2016, Plaintiff's "gait was mildly ataxic and he had difficulty with tandem gait." [R 67, 69.] The medical record reflects many other mentions of gait problems and ataxia the ALJ neglected to mention. In September 2014, at an EMG consultation, Plaintiff "complain[ed] of some gradual decline in overall function of his lower extremities with difficulty with walking, right leg weaker than the left," and the physical examination at that time revealed that Plaintiff's "gait shows what appears to be a spastic diplegic type of gait." [R 334.] In November 2014, Plaintiff reported to his treating physician that he had difficulties with his gait and difficulties standing on a ladder without feeling unsteady, and at that same visit it was noted that Plaintiff had abnormal heel to toe walking and abnormal straight line walking, both secondary to unstable gait. [R 372-73.] In January of 2015, Plaintiff again reported improved gait (*i.e.*, there was a prior period of impaired gait). [R 359.] In May 2015, Plaintiff displayed a gait imbalance; his ambulation level was recorded as "modified independence" and it was noted that he ambulated "using excessive trunk rotation/ant weight shift to assist with forward progression. [Plaintiff] has decreased stance time [in his right lower extremity] and has difficulty maintaining straight line dt balance/ proprioceptive decline and quick muscle fatigue." [R 481, 484.] This same record indicates Plaintiff's right lower extremity had "[n]o heel strike/foot flat, [d]ecreased weight bearing." *Id.* In both March 2016 and October 2016, Plaintiff's gait was mildly ataxic and he had difficulty with tandem walking. [R 77, 596.] Despite this evidence, the ALJ excluded the use of an assistive device from her RFC. *See Dean*, 2018 WL 3608555, at *4 (analyzing same evidence as above when deciding to remand).

8

Like *Dean*, we too find that this was an error that requires remand. The ALJ's finding that a cane or a walker was "not supported by the treatment record," particularly in light of the above-mentioned gait abnormalities, appears to condemn Plaintiff claims of regular cane/walker use despite lack of a prescription for said cane/walker. However, the Seventh Circuit has specifically noted that "a cane does not require a prescription" when condemning the "absurd" decision of an ALJ who found it "suspicious that plaintiff use[d] a cane when no physician had prescribed a cane." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Dean*, 2018 WL 3608555, at *4. We can see no reason it should be different for a walker. Here, while it is true that there is no prescription in the record, there are several references (in addition to his testimony) in the record that would tend to support Plaintiff's need for a cane or a walker.[5]

In the instant matter, it appears the ALJ ignored medical evidence supporting Plaintiff's gait and muscle control problems when she rather summarily dismissed Plaintiff's purported need for a cane/walker. Again, like in *Dean*, "[t]he ALJ should have more thoroughly examined this evidence and articulated logical reasons for disregarding this evidence in making [her] RFC findings." *Dean*, 2018 WL 3608555, at *4 (citing *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (remanding where ALJ did not build requisite logical bridge between evidence claimant needed a cane and RFC that did not account for a cane)). As has happened here, when an ALJ "fails to discuss evidence, this Court cannot give meaningful review to the [SSA's] decision because we are unable to determine if the evidence not discussed was ignored, overlooked or simply not believed." *Dunn v. Sullivan*, 1993 WL 730745, at *5 (N.D. Ill. Jan. 29, 1993) (citing *Bauzo v. Bowen*, 803 F.2d 917, 925 (7th Cir. 1986)). The

---

[5] Additionally, in the record before the Court, there are two early 2017 consultation notes that were submitted by Plaintiff's counsel to the Appeals Council that indicate Plaintiff was using a cane on two separate occasions when he saw his primary care provider, Dr. Chaurdy. [R 46, 54.] Plaintiff's counsel also submitted an August 2017 neurological consultation that was positive for difficulty with gait or walking. [R 14.] Lastly, in September 2017, in Plaintiff's application for a disability parking placard/license plates, Dr. David Ulaszek, MD, certified that Plaintiff must "use cane at all times." [R 19.] These documents may suggest a worsening progression of Plaintiff's MS, but regardless, it is the "evidence of the need for a walker or cane in the treatment record" that the ALJ felt was lacking, albeit from after the date of the ALJ's decision.

Plaintiff is correct that the Commissioner's citations to this Court were to summaries of some of the relevant evidence and not to an analysis of how the ALJ fully considered all the evidence related to a cane/walker. [Dkt. 25, p. 10.] This is perhaps because this "analysis" is simply missing from the ALJ's decision. The Court also agrees with Plaintiff that ALJ had to do more than to simply state that Plaintiff's use of a cane/walker was not supported by the record when the ALJ found that Plaintiff had a severe musculoskeletal impairment, the symptoms of which cause difficulty walking.[6] *Id.*; *see also* R 26 (detailing symptoms of MS). Because of this explanatory void, the Court cannot trace the ALJ's reasoning behind the decision to find Plaintiff not limited by a need to use a cane or a walker and, thus, remand is required.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 13] is granted; the Commissioner's motion for summary judgment [dkt. 23] is denied.

Entered: 12/20/2018

Susan E. Cox,
United States Magistrate Judge

---

[6] Although we make no findings on it, the ALJ on remand would be well served to make a careful analysis of Plaintiff's documented vision problems in light of the fact that an available job cited for Plaintiff was a "visual inspector." [R 72; *see also* R. 26 (detailing vision problems as a symptom of MS).]